IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JANE DOE, Individually and as Next Friend of JOHN DOE, a minor; RICHARD ROE 1, Individually and on behalf of JANE ROE 1, a minor; RICHARD ROE 2 and MRS. RICHARD ROE 2, Individually and on behalf of JANE ROE 2, a minor; all Individually and on behalf of a class of persons similarly situated,<br><br>      Plaintiffs,<br><br>  vs.<br><br>STATE OF HAWAII, SCOTT O'NEAL, SYDNEY DICKERSON, and John Does 1-10,<br><br>      Defendants.<br>_____<br><br>STATE OF HAWAII,<br><br>      Third-Party Plaintiff,<br><br>  vs.<br><br>PETER POES 1-100, PATRICIA POES 1-100, AND PARENT POES 1-100,<br><br>      Third-Party Defendants.<br>_____ | CIV. NO. 11-00550 DAE-KSC |

| | |
|---|---|
| SCOTT O'NEAL, | ) |
| | ) |
| Third-Party Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| ROXSANNE TOMITA, | ) |
| | ) |
| Third-Party Defendant. | ) |
| _____ | ) |

ORDER DENYING DEFENDANT SCOTT O'NEAL'S MOTION FOR PROTECTIVE ORDER

On October 14, 2011, the Court heard Defendant Scott O'Neal's Motion for Protective Order ("Motion"). Glenn H. Uesugi Esq., appeared on behalf of Plaintiffs; Randall K. Schmitt, Esq., appeared on behalf of Defendant Scott O'Neal; Deputy Attorney General Dennis K. Ferm appeared on behalf of Defendant State of Hawaii; and C. Bryan Fitzgerald, Esq., appeared on behalf of Defendant Sydney Dickerson. After reviewing the Motion as well as the supporting and opposing memoranda, the Court **DENIES** Defendant Scott O'Neal's ("O'Neal") Motion for Protective Order. (Doc. # 16.)

BACKGROUND

The instant case action arises from allegations relating to sexual assault which allegedly took place between and among students at the Hawaii Center for the Deaf and the Blind (the "School"). ("Compl., Doc. # 1-1.)

Plaintiffs claim that a group of students, identified as "Ringleaders" in the Complaint, had "[f]or many years . . . bullied, terrorized, assaulted, robbed sodomized, raped, anally raped, gang raped, and/or sexual attacked students," including Plaintiffs. (Id. ¶ 26.) Plaintiffs claim that Defendants "knew or should have known that the Ringleaders" engaged in this conduct. (Id. ¶ 28.) Plaintiffs specifically allege that Defendant Sydney Dickerson ("Dickerson"), the School's administrator and O'Neal, the School's counselor, "had actual knowledge and certainly had reason to know of the wrongful activities of the Ringleaders." (Id. ¶ 30.) According to Plaintiffs, the Ringleaders admitted to school counselors and O'Neal in particular "that they had in fact harmed and assaulted other students." (Id. ¶ 32.) The Complaint goes on to detail specific instances of sexual assault against Plaintiffs, and in particular against Plaintiff John Doe. (Id. ¶ 38–46.)

Plaintiffs also allege that O'Neal "engaged in inappropriate and questionable activities with students at the school, including having them stay with him overnight." (Id. ¶ 47.) Plaintiffs complain that "[o]ut of malice and an

improper purpose, Defendants at times concealed and conspired to conceal what was going on, and negligently, recklessly, and intentionally failed to take effective action to stop the wrongful activities." (Id. ¶ 48.) Specifically, Plaintiffs aver that Defendants failed to monitor bathrooms, notify appropriate authorities, and advise parents of victimized students. (Id. ¶¶ 49–51.)

Based on these facts, Plaintiffs assert against Defendants' causes of action for: (1) negligence and punitive damages (id. ¶ 70); (2) intentional infliction of emotional distress (id. ¶¶ 71–72); (3) violations of the Rehabilitation Act of 1973 (id. ¶¶ 73–74); (4) violations of the Americans with Disability Act (id. ¶¶ 75–76); (5) violations of Title IX of the Educational Amendments of 1972 (id. ¶¶ 77–80); (6) violations of the Individuals with Disabilities Act (id. ¶¶ 81–82); (7) state and federal constitutional violations (id. ¶¶ 83–88).

On August 26, 2011, Plaintiffs filed their Complaint in the First Circuit Court for the State of Hawaii. (See Doc. # 1-1.) On September 9, 2011, Defendants removed to federal court. (See Doc. # 1.) On September 21, 2011, O'Neal filed the instant Motion. ("Mot.," Doc. # 16.) On October 11, 2011, Plaintiffs filed an Opposition. ("Opp'n," Doc. # 35.) The same day, Defendant State of Hawaii filed a Response. ("Resp.," Doc. # 36.)

## STANDARD OF REVIEW

Because "[t]he potential for injury to the integrity of the judicial process is significant in cases involving trial publicity," a court may restrict publicity in certain circumstances. Levine v. U. S. Dist. Ct. for the Dist. of Cal., 764 F.2d 590, 595, 597 (9th Cir. 1985). However, "[o]nly the occasional case presents a danger of prejudice from pretrial publicity." Gentile v. State Bar of Nev., 501 U.S. 1030, 1064 (1991). To determine whether a case presents a danger of prejudice from pretrial publicity, a court must balance the interests of ensuring the integrity of the judicial process, including the right to a fair and impartial jury, with the competing First Amendment rights of the attorneys publicizing the case. See Levine, 764 F.2d at 595, 597; Gentile, 501 U.S. at 1075. To strike that balance, courts may issue a protective order (otherwise known as a "gag order") when a "substantial likelihood of material prejudice" may result from the extrajudicial statements. Gentile, 501 U.S. at 1075; see also Berndt v. Cal. Dep't of Corrections, 2004 WL 1774227, at *3 (N.D. Cal. August 9, 2004). Additionally, the order must be "narrowly drawn" and no "less restrictive alternatives" may be available, such as voir dire, change of venue or some other device. Levine, 764 F.2d at 595; Gentile, 501 U.S. at 1075; Berndt, 2004 WL 1774227, at *3.

## DISCUSSION

I. <u>Motion for Protective Order</u>

In his Motion, O'Neal seeks an order prohibiting "the parties and attorneys in this matter from communicating with the media" with respect to the following information:

1. The character, credibility, or reputation of a party;
2. The identity of a witness or expected testimony of a party or a witness;
3. The contents of any pretrial confession, admission, or statement given by a defendant or that person's refusal or failure to make a statement;
4. The identity or nature of physical evidence expected to be presented or the absence of such physical evidence;
5. The strengths or weaknesses of the case of either party; and
6. Any other information the lawyer knows or reasonably should know is likely to be inadmissible as evidence and would create a substantial risk of prejudice if disclosed.

(Mot. at 13.)

O'Neal requests the protective order because "[t]he media coverage surrounding this case has been rampant" and because Plaintiffs' attorney, Michael Green ("Green") has "attempt[ed] to win [the] case through the media and not the Court." (Mot. at 3.) O'Neal points to the following statements Green has made to the media in support of this assertion:

- "There's no question that people in the highest places of Department of Education knew about this. They knew about it at the very latest in 2009 and probably before. . . . You're talking about some people who can't see, so they can't be witnesses. We have people that can't hear, so they can't hear outcries. And somebody has to be held accountable for it. I have a concern that the police investigation was frustrated." (Mot., Ex. A.)
- "The parents whose children were suspected of wrong doing and parents of children apparently were preyed upon were never told. . . . Because I am clear that some of the people at [sic] the very top knew I have no doubt about that[.]" (Mot., Ex. B.)
- "It's not thinkable. You can send your child that has these special needs to a school and be worried about your child being raped. It's unthinkable. . . . Things that no child or no person should ever experience, coupled with the fact that these children have special needs. . . . The buck stops with the principal but there are a lot of loose coins underneath that buck that need to

be taken care of. . . . The teachers knew. I have no doubt that they knew." (Mot., Ex. C.)

- "There could be an obstruction of justice issue which are criminal, tampering with witnesses could be criminal, so there's a lot of stuff out there, and this is just the beginning of it. I think people will come forward." (Mot., Ex. D.)
- "I can't imagine raping someone in the bathroom and you get a timeout for that. Go stand in the corner for 15 minutes and don't do it again." (Mot., Ex. E.)
- "In the complaint there is an allegation about an adult, and we know that some of the students spent time at his home. And we also have reason to believe that he was aware of sexual misconduct among students at the school[.]" (Mot., Ex. F.)
- "If there was a conspiracy to cover this up and obstruct justice there is [sic] going to be some serious problems for people[.]" (Mot., Ex. G.)

Finally, O'Neal points to the online comments to articles which quote these statements as evidence that Green's "media blitz is having the desired effect on the public." (Mot. at 5–7.)

8

II.  Substantial Likelihood of Material Prejudice

As discussed, for O'Neal to be entitled to the relief he seeks, he must demonstrate a "substantial likelihood of material prejudice" such that he will not receive a fair trial. Gentile 501 U.S. at 1075. This Court must balance O'Neal's right to a fair and impartial jury trial, with Green's competing First Amendment rights. See Levine, 764 F.2d at 595, 597; Gentile, 501 U.S. at 1075.

O'Neal proffers two arguments for why there is a "substantial likelihood of material prejudice." Specifically, O'Neal contends that further statements by Green: (1) would cause "further prejudice" to O'Neal's livelihood and (2) threaten his right to a fair trial. (Mot. at 10.)

O'Neal's first argument is not persuasive. O'Neal contends that Green's comments will "further damage [his] reputation within the deaf community" such that prejudicial statements by Green "will only serve to further blacklist [O'Neal's] name within [the deaf] community." O'Neal argues that "a protective order is necessary in this matter to prevent further prejudice to [O'Neal] and protect his livelihood." (Id.)

While the Court is sympathetic to these arguments, they are not relevant for resolution of the instant Motion. The Supreme Court in Gentile was clear, to obtain a protective order in this context a Court considers an individual's

9

right to a "fair trial by impartial jurors," not potential damage to that individual's livelihood. See 501 U.S. at 1075 ("Few, if any interest under the Constitution are more fundamental than the right to a fair trial by 'impartial jurors,' and an outcome affected by extrajudicial statements would violate that fundamental right."). Indeed, the Court explicitly stated that limitations in this context "are aimed at two principal evils: (1) comments that are likely to influence the actual outcome of the trial, and (2) comments that are likely to prejudice the jury venire, even if an untainted panel can ultimately be found." Id. O'Neal's arguments about the damage to his livelihood cannot therefore be a part of this Court's calculus at present.[1] Instead, as indicated above, this Court must balance O'Neal's right to a fair and impartial trial, with Green's competing First Amendment rights. See Levine, 764 F.2d at 595, 597; Gentile, 501 U.S. at 1075. O'Neal's first argument is therefore not persuasive.

---

[1] To be certain, O'Neal may be entitled to relief in another context. For instance, O'Neal might be entitled to a preliminary injunction or a temporary restraining order in a defamation suit against Green, but that is not the issue here. O'Neal specifically filed the instant Motion because he claims Green's accusations are "a blatant attempt by [Green] to win [the] case through the media and not the Court." (Mot. at 3.) The Court's inquiry is therefore limited to whether and to what extent Green's statements have threatened O'Neal's right to a fair trial. See Levine, 764 F.2d at 595, 597; Gentile, 501 U.S. at 1075.

As to O'Neal's second argument, that Green's extrajudicial statements threaten O'Neal's right to a fair trial, the Court cannot conclude that the statements were so inflammatory that this Court should impose a restraint on Green's freedom of speech by Court order.

As a preliminary matter, the substance of the grand majority of Green's statements to the media are already a part of the public record. Green, for instance, has stated that "people in the highest places of the Department of Education knew about [the sexual assault.]" (Mot., Ex. A.) In the Complaint, Plaintiffs allege specifically that Defendants "covered up and attempted to cover up . . . what was happening at the school, including through threats." (Compl. ¶ 21.) Similarly, Green told the media that "[t]he parents whose children were suspected of wrong doing and parents of children apparently were prayed upon and were never told." (Mot., Ex. B.) In the Complaint, Plaintiffs allege that "Defendants failed to advise parents of victimized students . . . concerning what was happening." (Compl. ¶ 51.) Indeed, Green, in the only statement where he nearly mentions O'Neal by name, stated as follows:

> In the complaint there is an allegation about an adult, and we know that some of the students spent time at his home. And we also have reason to believe that he was aware of sexual misconduct among students at the school[.]

11

(Mot, Ex. F.) In the Complaint, Plaintiffs allege that "O'Neal himself engaged in inappropriate and questionable activities with students at the school, including having them stay with him overnight." (Compl. ¶ 47.) The Complaint also alleges that O'Neal "had actual knowledge and certainly had reason to know of the wrongful activities of the Ringleaders." (Id. ¶ 30.) The Court cannot conclude that Green's statements, which, by and large, are contained in the Complaint and already a part of the public record, are so inflammatory that the Court should restrain Green's speech.

Moreover, the qualitative nature of Green's statements simply do not rise to the high level necessary to justify issuing a protective order. The instant case certainly does not compare favorably to the seminal United States Supreme Court decision in Sheppard v. Maxwell, 384 U.S. 333 (1966). There, the Court held a defendant did not obtain a fair trial where, in a nationally sensationalized murder trial, the names of the jurors had been disclosed to the media and the trial court denied the defendant's request to examine the jury concerning what they had heard in the media regarding the case. Id. at 353–57. Nor does it compare favorably with Levine. There, the defendant was a former special agent with the Federal Bureau of Investigation who was arrested and charged with espionage. 764 F.2d at 592. "The criminal proceedings against [the defendant] received

extensive local and national media coverage." Id. at 593. The court there twice admonished defense counsel "to maintain an atmosphere in which a fair trial could be conducted." Id. Notwithstanding the warning, the defendant's attorneys began to discuss trial strategy and the implications of various court decisions with reporters for the Los Angeles Times. Id. Thereafter the district court issued a protective order prohibiting either party's attorneys from speaking to the press. Id. The Ninth Circuit concluded under those circumstances that "the record support[ed] the district court's conclusion that the activity restrained [posed] a serious and imminent threat to the administration of justice." Id. at 598. This was particularly so because of the potential "circus-like environment that surrounds highly publicized trials" and because the case had received widespread publicity. Id.

    While it is true that the instant case has received some publicity, it is not comparable to the levels described either in Levine or Sheppard. There is certainly no national media attention as yet on the instant case as in either case. Nor has Green discussed trial strategy or the implications of this Court's rulings with the media as in Levine. Instead, as discussed, Green has done little more than reiterate what is already a part of the public record as contained in the Complaint. Under these circumstances, Green's statements have not been so inflammatory that

13

O'Neal's right to a fair trial requires this Court to issue a protective order. In other words, the Court cannot conclude that there exists or will exist a "substantial likelihood of material prejudice" such that O'Neal will not receive a fair trial. Gentile 501 U.S. at 1075.

Moreover, the Court has at its disposal a variety of tools to ensure that the jury pool will not be tainted which are "less restrictive" than a protective order. Levine, 764 F.2d at 595; Gentile, 501 U.S. at 1075. For instance, the Court will incorporate into its voir dire a question about the extent to which each potential juror has heard about the case and whether their knowledge of the case will color their opinion at trial.

The Court does, however, caution Mr. Green to exercise restraint in his dealings with the media. Moving forward Green must "maintain an atmosphere in which a fair trial could be conducted." Levine, 764 F.2d at 593. Indeed, this Court wishes to remind all counsel of their obligations under Hawaii Rules of Professional Conduct 3.6 which provides that

> [a] lawyer who is participating . . . in the litigation of a matter shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.

14

Haw. R. Prof'l Conduct 3.6. The Court expects all counsel to adhere to their ethical obligations moving forward in these proceedings. The Court will not allow this trial to devolve into a "circus-like environment" as in Levine or Sheppard.

CONCLUSION

For these reasons, the Court **DENIES** Defendant Scott O'Neal's ("O'Neal") Motion for Protective Order. (Doc. # 16.)

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, October 14, 2011.

_____
David Alan Ezra
United States District Judge

Doe, et al. v. State of Hawaii, et al, Civ. No. 11-00550 DAE-KSC; ORDER DENYING DEFENDANT SCOTT O'NEAL'S MOTION FOR PROTECTIVE ORDER